# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| AUSTIN RUGG, JENNIFER FISH, and KAREN SANCHEZ, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON,<br><br>    Defendant. | Case No. 17-cv-05010-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 36] |

Plaintiffs Austin Rugg, Jennifer Fish, and Karen Sanchez are consumers who allege that they were misled by the term "hypoallergenic" on labels of baby products manufactured by Defendant Johnson & Johnson ("J&J").[1] Plaintiffs seek to pursue nationwide class claims under California's consumer protection laws "and similar statutes," and under New Jersey's consumer protection laws.

J&J has filed a motion to dismiss the first amended complaint ("FAC"), seeking dismissal of the pleading as a whole under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, and seeking dismissal of certain claims under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction.

For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

---

[1] Defendant asserts that although the first amended complaint names Johnson & Johnson as the Defendant, the real party in interest is Johnson & Johnson Consumer Inc. Def.'s Motion at p.4 n.1. The Court's identification of Defendant as "Johnson & Johnson" or "J&J" is purely for the sake of consistency with the FAC and does not constitute a determination as to which entity properly is named as the defendant in this suit.

## I. BACKGROUND[2]

Plaintiff Rugg, a California citizen, filed this action in the Santa Clara County Superior Court on July 21, 2017. Compl., ECF 1-2. Rugg alleged that he purchased two J&J products, Baby Bedtime Moisture Wash and Baby Bedtime Lotion, from a Target store in Santa Clara, California. Compl. ¶ 23. In making those purchases, Rugg relied on label representations that the products were "hypoallergenic." Compl. ¶ 24. Rugg claimed that the two products he purchased in fact were not hypoallergenic, and that had he known as much he would not have purchased them. Compl. ¶ 25-26. Rugg filed this putative nationwide class action based on J&J's use of the term "hypoallergenic" in the labeling of the two products he purchased and in the labeling of thirty other products that he did not purchase. Compl. ¶ 60. He asserted claims for breach of express warranty, unjust enrichment, and violation of California's consumer protection laws and "similar statutes." Compl. ¶¶ 207, 209, 211, 223, 233.

J&J's removed the action to federal district court on the basis of diversity of citizenship and thereafter moved to dismiss the complaint. Notice of Removal, ECF 1; Def.'s Motion to Dismiss, ECF 28. Rugg filed the operative FAC in response to the motion to dismiss, adding two additional named plaintiffs: Jennifer Fish, a California citizen, and Karen Sanchez, a New Jersey citizen. FAC ¶¶ 32, 40, ECF 32. Collectively, Rugg, Fish, and Sanchez purchased seven different J&J products labeled as hypoallergenic. FAC ¶¶ 24, 32, 40. Plaintiffs allege that they relied on label representations that the products they purchased were hypoallergenic and would not have purchased the products had they known those representations were untrue. FAC ¶¶ 25-27, 33-35, 41-43. Plaintiffs assert claims based on J&J's use of the term "hypoallergenic" in the labeling of the seven purchased products and twenty-five other products that they did not purchase. FAC ¶ 84. They seek to represent a Nationwide Class, a California Class, and a New Jersey Class. FAC ¶¶ 214-16.

Plaintiffs assert the following claims under California consumer laws and "similar statutes," and under New Jersey consumer laws: (1) Breach of Express Warranty; (2) Unjust

---

[2] Plaintiff's factual allegations are accepted as true for purposes of the motion to dismiss under Rule 12(b)(6). *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

2

Enrichment; (3) Unfair and Deceptive Acts and Practices; (4) Violations of California's False Advertising Law and Similar Statutes; (5) Violation of California's Unfair Competition Law and Similar Statutes; (6) Violation of New Jersey Consumer Fraud Act; and (7) Violation of New Jersey Truth-in-Consumer Contract, Warranty and Notice Act.

As noted above, J&J moves to dismiss all claims under Rule 12(b)(6) and some claims under Rules 12(b)(1) and 12(b)(2).

## II. RULE 12(b)(6) – FAILURE TO STATE A CLAIM

J&J seeks dismissal under Rule 12(b)(6) on numerous grounds, including that: Plaintiffs' claims depend on a definition of "hypoallergenic" which is unreasonable as a matter of law; the claims fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); Plaintiffs cannot pursue claims based on a lack-of-substantiation theory; the claims are preempted in several respects; and Plaintiff Rugg's claims have been released. In evaluating these arguments, the Court applies the well-known standard articulated by the Supreme Court in *Iqbal* and *Twombly*: while a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Definition of "Hypoallergenic"

The bulk of Plaintiffs' claims are asserted under California and New Jersey consumer protection statutes (Claims 3-7). Plaintiffs also assert a claim for unjust enrichment under California law (Claim 2), which is wholly dependent on the claims for violation of consumer protection statutes. Finally, Plaintiffs assert a claim for breach of express warranty under California law (Claim 1). J&J argues that all of those claims are subject to dismissal because Plaintiffs' definition of the term "hypoallergenic" is unreasonable as a matter of law.

Claims brought under consumer protection statutes are governed by a "reasonable consumer" test, under which a plaintiff "must show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation marks and

citation omitted) (claims under California's False Advertising Law and Unfair Competition Law are governed by reasonable consumer test); *Popejoy v. Sharp Elecs. Corp.*, No. CIV. 2:14-06426 WJM, 2015 WL 5545067, at *3 (D.N.J. Sept. 18, 2015) (claims under California and New Jersey consumer protection statutes must allege that the defendant "made statements likely to deceive an average or reasonable customer"). "The reasonable consumer standard adopts the perspective of the ordinary consumer acting reasonably under the circumstances." *Ross v. Sioux Honey Ass'n, Co-op.*, No. C-12-1645 EMC, 2013 WL 146367, at *16 (N.D. Cal. Jan. 14, 2013) (internal quotation marks and citation omitted). "The reasonable consumer need not be exceptionally acute and sophisticated." *Id.* (internal quotation marks and citation omitted). To the contrary, the reasonable consumer test focuses on the perspective of "ordinary minds." *Id.*

Plaintiffs assert that consumers believe that a hypoallergenic product "does not contain any skin sensitizers." FAC ¶ 63. Plaintiffs define "skin sensitizer" as "a substance that causes sensitization by skin contact in a substantial number of persons based on human evidence or appropriate animal testing." FAC ¶ 59. Plaintiffs also assert that consumers "believe and expect that a product that is labeled as hypoallergenic contains no ingredients known to produce a negative reaction – skin irritation, skin corrosion, eye damage, birth defects, cancer, genetic mutations, etc." FAC ¶ 68. According to Plaintiffs, J&J's use of the term "hypoallergenic" in the labeling of the thirty-two products at issue is false and misleading because all of those products contain "known skin sensitizers," "known skin or eye irritants, carcinogens, teratogens, mutagens, or pollutants," and "substances that have not been adequately assessed for safety or skin sensitization potential." SAC ¶ 87.

J&J argues that Plaintiffs have not alleged facts showing that a reasonable consumer would understand "hypoallergenic" to have the definition attributed to it by Plaintiffs. The Court agrees. As J&J points out, the term "hypoallergenic" is a commonly used term which is defined by the *Merriam-Webster Dictionary* as "having little likelihood of causing an allergic response." https://www.merriam-webster.com/dictionary/hypoallergenic (last visited June 13, 2018).[3] Other

---

[3] The Court GRANTS J&J's request for judicial notice of dictionary definitions and court filings. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may

4

dictionaries have similar definitions. For example, the *Oxford English Dictionaries* defines "hypoallergenic" as "relatively unlikely to cause an allergic reaction," and *The American Heritage Dictionary* defines it as "[h]aving a decreased tendency to provoke an allergic reaction." https://en.oxforddictionaries.com/definition/hypoallergenic (last visited June 13, 2018); https://www.ahdictionary.com/word/search.html?q=hypoallergenic (last visited June 13, 2018). Given these definitions, the Court finds it completely implausible that a reasonable consumer would understand the use of the term "hypoallergenic" on a product's label to mean that the product does not contain *any* ingredients, in any concentration, which could "sensitize" the skin, cause cancer, or have *any* other negative effect, regardless of whether such effect constitutes an allergic reaction. *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *7 (N.D. Cal. Mar. 15, 2016) (looking to the dictionary definition of "guarantee" to conclude that a reasonable consumer would not consider a product's ten-year guarantee to have the meaning asserted by the plaintiff).

Plaintiffs argue in opposition to J&J's motion that the dictionary definitions of hypoallergenic are "not substantively different from Plaintiffs' definition." Pls.' Opp. at 5, ECF 43. That argument is without merit, as the definition set forth in the FAC appears to be wholly unrelated to the concept of allergic reaction, which is at the heart of the dictionary definitions of hypoallergenic. Plaintiffs argue that a "skin sensitizer" is by definition a chemical known to cause an allergic response, citing Occupational Safety and Health Administration ("OSHA") regulations in support of their position. Because the FAC does not cite to the OSHA regulations upon which Plaintiffs rely, the Court cannot consider those regulations in determining the sufficiency of Plaintiffs' claims. Plaintiffs may, of course, incorporate the OSHA regulations into an amended pleading. The Court is dubious, however, that such incorporation would advance Plaintiffs' position, as the ordinary consumer of J&J baby products likely has not even heard of OSHA.

"Because the 'reasonable consumer' inquiry is an objective standard, claims may be

---

take judicial notice of court filings and other matters of public record."); *Gonzalez v. Guzman*, No. 17-CV-241-GPC-BGS, 2017 WL 5446087, at *3 n.4 (S.D. Cal. Nov. 14, 2017) ("Dictionary definitions are a proper subject for judicial notice.").

dismissed as a matter of law where an alleged statement . . . in context, is such that no reasonable consumer could be misled in the manner claimed by the plaintiff." *Vitt v. Apple Computer, Inc.*, No. CV 06-7152-GW (FMOX), 2010 WL 11545683, at *3 (C.D. Cal. May 21, 2010) (internal quotation marks and citation omitted). Applying this standard, the Court concludes that Plaintiffs' claims for violation of consumer protection statutes (Claims 3-7), and for unjust enrichment (Claim 2) based on such violation, are subject to dismissal.

J&J argues that Plaintiffs' warranty claim (Claim 1) likewise is subject to dismissal under the reasonable consumer test. Def.'s Motion at 9, ECF 36. Several courts, including this one, have suggested that the reasonable consumer test applies to express warranty claims under California law. *See, e.g., Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017) (holding that claims for breach of an express warranty "require a showing that alleged statements or omissions are 'likely to deceive' reasonable consumers"). That approach does not appear to be uniform, however, and it may be problematic in light of a shift in California law eliminating reliance as an element of express warranty claims. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 915-16 (N.D. Cal. 2018) (recognizing shift in California law and discussing cases that have not required reliance as a prerequisite to asserting an express warranty claim). It is unclear how the reasonable consumer test, under which the plaintiff must show that a particular representation is likely to deceive, would apply to an express warranty claim if the consumer need not see or rely on the statement to bring the claim.

Even absent application of the reasonable consumer test, the Court concludes that the claim for breach of express warranty is subject to dismissal because it depends on Plaintiff's implausible definition of "hypoallergenic." "To prevail on a breach of express warranty claim, Plaintiffs must prove: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Kellman v. Whole Foods Market, Inc.*, No. 17-CV-06584-LB, 2018 WL 2938612, at *13 (N.D. Cal. June 12, 2018) (internal quotation marks and citation omitted). Plaintiffs allege that J&J warrantied that its products were hypoallergenic and breached those warranties by providing goods that were not hypoallergenic. FAC ¶¶ 230-33. However, for the reasons discussed above,

6

Plaintiffs have failed to allege facts showing that the products in question are not hypoallergenic under a plausible definition of that term.

Accordingly, the motion to dismiss is GRANTED WITH LEAVE TO AMEND as to all claims based on Plaintiffs' implausible definition of the term "hypoallergenic."[4]

### B. Rule 9(b)

J&J argues that Plaintiffs' claims also are subject to dismissal for failure to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that where a claim is grounded in fraud, the circumstances constituting the fraud must be alleged with particularity. Fed. R. Civ. P. 9(b); *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). The rule does not apply to Plaintiffs' express warranty claim (Claim 1), because fraud is not an essential element of that claim. *See Kearns*, 567 F.3d at 1124 ("Where fraud is not an essential element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard."); *McLellan v. Fitbit, Inc.*, 3:16-CV-00036-JD, 2018 WL 2688781, at *2 (N.D. Cal. June 5, 2018) (Rule 9(b) did not govern warranty claims "because those claims [were] based not on fraudulent representations but on Fitbit's failure to deliver devices that track heart rate as promised by device packaging and promotional materials").

Rule 9(b) does apply to the remainder of Plaintiffs' claims (Claims 2-7), however, because those claims are grounded in fraud. The Court has no difficulty concluding that Plaintiffs' fraud-based claims fail to satisfy Rule 9(b). The FAC identifies thirty-two products which allegedly were mislabeled as "hypoallergenic" despite containing ingredients which do or might cause negative effects, and it identifies seventy-nine such ingredients. However, the FAC does not specify which of the thirty-two products contain which of the seventy-nine ingredients. In

---

[4] The Court notes that another judge in this district found a similar definition of "hypoallergenic" adequate to support labeling claims against Whole Foods Market, Inc. *See Kellman v. Whole Foods Market, Inc.*, 2018 WL 2938612, at *13. The operative pleading in *Kellman* alleged facts not asserted in the present case, for example, that the named plaintiffs had suffered skin irritation, eye irritation, dermatitis, and allergic skin reactions. *See id.* at *4. Moreover, the *Kellman* court observed that the plaintiffs before it were "not alleging that a product must contain no skin sensitizers or never cause an allergic reaction to be hypoallergenic," *see id.* at *12, whereas Plaintiffs in the present action allege exactly that, *see* FAC ¶ 63, 68. Accordingly, while this Court has given careful consideration to *Kellman*, as it does the decisions of all judges in this district, that consideration does not alter this Court's analysis under Rule 12(b)(6).

opposition to the motion, Plaintiffs argue that they have attached to the FAC images of labels and ingredient lists corresponding to the products at issue. The Court declines to page through those images in an attempt to determine the substance of Plaintiffs' claims. *See Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *4 (N.D. Cal. May 6, 2015) ("Plaintiff cannot simply identify a list of products, allege a slew of problems with Defendant's labeling of those products, and then ask Defendant and the Court to mix and match.").

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 2-7 for failure to satisfy Rule 9(b).

### C. Lack-of-Substantiation

J&J seeks dismissal of claims based on allegations that certain ingredients are suspected of causing negative effects and/or have not been adequately tested. J&J argues, and Plaintiffs do not dispute, that lack-of-substantiation claims may not be pursued under California or New Jersey law. *See Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) ("Claims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws."); *Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 128 (3d Cir. 2010) ("[A] New Jersey Consumer Fraud Act claim cannot be premised on a prior substantiation theory of liability."). Plaintiffs representation that they are not asserting a lack-of-substantiation claim.

Based on Plaintiffs' representation and applicable law, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to all claims for lack-of-substantiation.

### D. Preemption

J&J also seeks dismissal of all claims based on J&J's alleged *omission* of information in its labeling, arguing that any such claims are preempted by the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*. Plaintiffs concede that any such claims would be preempted and represent that they are not asserting claims based on omissions – as opposed to affirmative misrepresentations – in labeling.

Accordingly, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to all claims based on omissions in labeling.

### E. Plaintiff Rugg's Prior Settlement and Release

J&J argues that Plaintiff Rugg's claims are barred by a settlement and release approved in a prior class action, *Leiner v. Johnson & Johnson Consumer Cos., Inc.*, No. 1:15-cv-05876-EEB (N.D. Ill.). The *Leiner* settlement resolved four class action complaints on behalf of consumers who purchased certain Johnson & Johnson products. The actions challenged promotional statements that those "Covered Products" were "clinically proven" to help babies sleep. *Leiner* Settlement ¶ II.A.15, RJN Exh. A, ECF 37. Under the settlement, class members released *all claims*, *known or unknown*, "*arising out of or relating to* the allegations in the Actions *or JJCI's labeling*, marketing, advertising, packaging, promotion, manufacture, sale and distribution *of all Covered Products*." *Leiner* Settlement ¶ IX.B.1, RJN Exh. A, ECF 37 (emphasis added). Those claims were released for a class period of July 1, 2010 through the date preliminary approval of settlement was entered, August 31, 2016. *Id.* ¶ II.A.12.

Rugg admittedly was a member of the *Leiner* settlement class. The two products upon which his current claims are based – Baby Bedtime Moisture Wash and Baby Bedtime Lotion – were "Covered Products" in the *Leiner* settlement, which were purchased during the *Leiner* class period. FAC ¶ 24 (alleging purchase of Baby Bedtime Moisture Wash and Baby Bedtime Lotion in January 2016); *Leiner* Settlement ¶ II.A.12 (defining class period); *Leiner* Settlement ¶ II.A.15 (listing Covered Products). Rugg's current claims thus fall squarely within the broad language of the *Leiner* Settlement, which released all claims arising out of or relating to the labeling of all Covered Products. However, "a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

In *Hesse*, the Ninth Circuit reiterated its prior holding that "[a] settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse*, 598 F.3d at 590 (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008)). The Court then considered whether claims relating to Sprint's statewide surcharge to

recoup the cost of Washington state taxes were based on the identical factual predicate as previously settled claims relating to Sprint's nationwide surcharges to recoup of the costs of compliance with federal programs. *Id.* at 591. The court answered that question in the negative, concluding that although both sets of claims involved Sprint's improper billing of government taxes or fees to its customers, "they deal with different surcharges, imposed to recoup different costs, that were alleged to be improper for different reasons."

Applying *Hesse* to the facts of the present case, the Court agrees with Plaintiffs that the *Leiner* settlement does not bar Rugg's current claims. Although the two sets of claims are superficially similar – they both relate to the labeling of Johnson & Johnson products – they deal with completely different representations. Accordingly, as the Ninth Circuit concluded in *Hesse*, "[t]he superficial similarity between the two class actions is insufficient to justify the release of the later claims by the settlement of the former." *Hesse*, 598 F.3d at 591. J&J's reliance on *McCormick v. Am. Equity Inv. Life Ins. Co.*, No. 2-05-cv-06735-CAS, 2016 WL 850821, at *8 (C.D. Cal. Feb. 29, 2016), is misplaced because in that case the court made an express finding that the claims before it were "based upon the same factual predicate as that underlying the settled class claims."

The motion to dismiss is DENIED to the extent it seeks dismissal of Plaintiff Rugg's claims based on the *Leiner* settlement.

### III. RULE 12(b)(1) – LACK OF SUBJECT MATTER JURISDICTION

J&J seeks dismissal under Rule 12(b)(1) with respect to all claims based on unpurchased products and unseen advertisements or websites, and all claims for injunctive or declaratory relief. J&J argues that Plaintiffs lack Article III standing to pursue those claims.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* When applying this

10

standard in the context of labeling claims, this Court has held that the plaintiff must "allege facts establishing that unpurchased products are so substantially similar to purchased products as to satisfy Article III requirements." *Romero*, 2015 WL 2125004, at *5 (internal quotation marks and citation omitted). "In considering whether unpurchased products are sufficiently similar to purchased products to satisfy Article III, the Court considers factors that include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Id.* (internal quotation marks and citation omitted).

The Court agrees with J&J that Plaintiffs have not made the requisite showing of substantial similarity to establish standing with respect to the unpurchased products in this case. Plaintiffs do allege that all of the products bear the same mislabeling, that is, the word "hypoallergenic." However, the thirty-two products identified in the FAC are not all of the same kind, as they include body wash, baby powder, lotion, cream, shampoo, conditioner, and detangler. FAC ¶ 84, ECF 32. Moreover, as noted above, Plaintiffs have not alleged which products contain which of the seventy-nine allegedly harmful ingredients identified in the FAC. Plaintiffs thus have not provided enough information about the products in question to show that they are substantially similar. *See Kellman*, 2018 WL 2938612, at *15 (plaintiff lacked Article III standing where ingredients of unpurchased products were not identified, but had Article III standing where ingredients of unpurchased products were alleged to be similar to ingredients of purchased products).

It is unclear whether Plaintiffs assert false advertising or other fraud-based claims based on advertisements or websites. To the extent that they do assert such claims, Plaintiffs have failed to allege that they viewed and relied on such advertisements or websites. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (collecting cases requiring "plaintiffs to allege they actually saw and relied on alleged misrepresentations" to bring UCL claim based on false advertising).

With respect to Plaintiffs' claims for injunctive or declaratory relief, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v.*

11

*Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "To establish standing to seek injunctive relief or declaratory relief, a plaintiff must show he is under threat of suffering 'injury in fact that is concrete and particularized and that the threat must be actual and imminent, not conjectural or hypothetical." *N.Y. v. San Ramon Valley Unified Sch. Dist.*, No. 17-CV-03906-MMC, 2018 WL 2463243, at *2 (N.D. Cal. June 1, 2018) (internal quotation marks, citation, and alterations omitted). The Ninth Circuit has held that under certain circumstances, a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the defendant's future advertising can constitute an injury sufficient to grant Article III standing to seek prospective relief. *Davidson*, 889 F.3d at 967. In *Davidson*, the Court found that the plaintiff, who had brought suit based on the defendant's allegedly false representations that its bathroom wipes were "flushable," had standing to seek injunctive relief where she alleged that she: continued to desire to purchase wipes suitable for disposal in a household toilet; would purchase truly flushable wipes manufactured by the defendant if it were possible; regularly visited stores where the defendant's flushable wipes were sold; and continually saw the defendant's flushable wipes packaging but had no way of determining the truth of the representation that the wipes were "flushable." *Id.* at 970-71. Plaintiffs in the present case have not alleged similar facts. While Plaintiffs allege that they "would consider" buying J&J's products, they do not allege an affirmative desire to buy J&J's products, regular visits to stores where J&J's products are sold, or continuous exposure to J&J's labeling. *See* FAC ¶¶ 29-30, 37-38, 45-46.

Accordingly, the motion to dismiss is GRANTED WITH LEAVE TO AMEND as to claims based on unpurchased products or unviewed advertising or websites, and claims for injunctive or declaratory relief.

**III. RULE 12(b)(2) – LACK OF PERSONAL JURISDICTION**

Finally, J&J argues that Plaintiff Sanchez's claims must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction because the claims have no connection with California. J&J relies on the Supreme Court's holding in *Bristol-Myers Squibb* that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum

State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (internal quotation marks, citation, and alteration omitted). "When there is no such connection, specific jurisdiction is lacking." *Id.*

At the hearing, the Court acknowledged the importance of the *Bristol-Meyers Squibb* issue in this case, but it expressed reluctance to address *Bristol-Meyers Squibb* at this time because the parties had devoted the bulk of their briefing to other issues. The Court stated that it would deny this aspect of J&J's motion without prejudice to renewal and consideration on adequate briefing.

The motion to dismiss is DENIED WITHOUT PREJUDICE as to the issue of lack of personal jurisdiction under *Bristol-Meyers Squibb*.

## IV. ORDER

(1) J&J's motion to dismiss is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, as set forth above;

(2) Any amended complaint shall be filed on or before July 18, 2018;

(3) Leave to amend is granted only as to the defects alleged herein – Plaintiffs may not add new claims or parties without express leave of the Court; and

(4) Pursuant to the parties' stipulation on the record, discovery is stayed pending Plaintiffs' filing of an amended pleading.

Dated: June 18, 2018

BETH LABSON FREEMAN
United States District Judge