**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AUSTIN RUGG and JENNIFER FISH, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON,<br><br>Defendant. | Case No. 17-cv-05010-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 62] |

Plaintiffs Austin Rugg and Jennifer Fish are consumers who allege that they were misled by the term "hypoallergenic" on labels of baby products manufactured by Defendant Johnson & Johnson ("J&J"). Plaintiffs seek to pursue claims on behalf themselves and other consumers of J&J baby products, specifically, a Nationwide Class and a California Class.

J&J moves to dismiss the second amended complaint ("SAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim, respectively.

For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

**I. BACKGROUND**

This action was filed by Plaintiff Rugg, a California citizen, in the Santa Clara County Superior Court on July 21, 2017. *See* Compl., ECF 1-2. Following removal of the action to federal district court and in response to a motion to dismiss by J&J, Rugg filed a first amended complaint ("FAC") as of right. *See* FAC, ECF 32. The FAC added two additional named plaintiffs, California citizen Jennifer Fish and New Jersey Citizen Karen Sanchez. *See* FAC ¶¶ 32,

40, ECF 32. J&J again moved to dismiss, and the Court granted that motion in part and permitted Plaintiffs to file the current SAC. *See* Prior Dismissal Order, ECF 57. The SAC names only Rugg and Fish as Plaintiffs; Sanchez has been dropped from the pleading. *See* SAC, ECF 60.

Rugg bought two J&J products, Baby Bedtime Moisture Wash and Baby Bedtime Lotion, from a Target store in Santa Clara, California. SAC ¶ 24. In making those purchases, Rugg relied on label representations that the products were "hypoallergenic." SAC ¶ 25. Fish bought two J&J products, Baby Head-to-Toe wash from a Bed Bath & Beyond store in San Francisco, and Baby Lotion from a Babies 'R' Us in Colma. SAC ¶ 33. In making those purchases, Fish relied on label representations that the products were "hypoallergenic." SAC ¶ 34. Collectively, then, Plaintiffs Rugg and Fish purchased four J&J products. They seek to represent Nationwide and California classes of persons who purchased twenty-eight different products. SAC ¶ 84.

Plaintiffs assert the following claims on behalf of the Nationwide Class or, in the alternative, the California Class: (1) Breach of Express Warranty under unspecified law; (2) Unjust Enrichment under unspecified law; (3) Unfair and Deceptive Acts and Practices under California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785, and "similar statutes"; (4) Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq., and "similar statutes"; and (5) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and "similar statutes."

## II. RULE 12(b)(1) – LACK OF SUBJECT MATTER JURISDICTION

J&J seeks dismissal under Rule 12(b)(1) with respect to all claims based on unpurchased products, claims based on unseen websites or advertisements, and claims for injunctive relief. J&J argues that Plaintiffs lack Article III standing to pursue those claims.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

### A. Unpurchased Products

"There is no controlling authority in the Ninth Circuit on the issue of whether a named plaintiff in a class action has standing to assert claims based on products he or she did not purchase." *Shank v. Presidio Brands, Inc.*, No. 17-CV-00232-DMR, 2018 WL 510169, at *6 (N.D. Cal. Jan. 23, 2018). "Courts have split on the question of whether actual purchase is required to establish standing." *Id.* (collecting cases). "The majority of courts hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* (internal quotation marks and citation omitted). This Court has followed the majority approach, holding that in the context of labeling claims, the plaintiff must "allege facts establishing that unpurchased products are so substantially similar to purchased products as to satisfy Article III requirements." *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at *5 (N.D. Cal. May 6, 2015) (internal quotation marks and citation omitted). "In considering whether unpurchased products are sufficiently similar to purchased products to satisfy Article III, the Court considers factors that include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Id.* (internal quotation marks and citation omitted).

The twenty-eight products at issue fall into three general categories: washes and wash cloths; hair; and lotions and creams. *See* SAC ¶ 84. These twenty-eight products are formulated with different combinations of sixty-seven ingredients that are "known skin sensitizers." *Id.* The Court expressed concern at the hearing that, given the products' different purposes and different formulations, Plaintiffs have not alleged facts establishing that the four purchased products are sufficiently similar to the twenty-four unpurchased products to confer standing on Rugg and Fish to sue on the unpurchased products. Plaintiffs' counsel stated that the SAC was intended to allege that each of the twenty-eight products contains one or more of four specific ingredients, Polysorbate 20, Tetrasodium ETDA, Phenoxyethanol, and Sodium Benzoate. Hrg. Tr. 23:1-18, ECF 72. Plaintiffs' counsel argued that the presence of one or more of these four ingredients in all twenty-eight products renders the twenty-four unpurchased products substantially similar to the

3

1 four purchased products for Article III purposes. *Id.*

2 If Plaintiffs' claims clearly were limited to allegations that the inclusion of one or more of the four ingredients identified above rendered false J&J's labeling of baby products as "hypoallergenic," the Court might be persuaded to find that Plaintiffs have standing to sue on the unpurchased products, even though the products have different uses. However, Plaintiffs' claims are not so limited as currently framed. It appears to the Court that Plaintiffs' claims are based not just on the presence of one or more of the four ingredients identified above, but also on the presence of widely varying combinations of sixty-three *other* ingredients. The Court declines to find the requisite similarity if that is Plaintiffs' theory.

Accordingly, J&J's motion to dismiss all claims based on unpurchased products is GRANTED WITH LEAVE TO AMEND. Plaintiffs are granted one final opportunity to allege facts showing that the unpurchased products are substantially similar to the purchased products.

### B. Websites and Advertisements

In its prior dismissal order, the Court observed that it was unclear whether Plaintiffs assert false advertising or other fraud-based claims based on advertisements or websites. *See* Prior Dismissal Order, ECF 57. The Court held that to the extent that they do assert such claims, Plaintiffs have failed to allege that they viewed and relied on such advertisements or websites. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (collecting cases requiring "plaintiffs to allege they actually saw and relied on alleged misrepresentations" to bring UCL claim based on false advertising). In the SAC, Plaintiffs continue to refer to alleged misrepresentations on J&J's website and advertising, but they have not added any facts suggesting that they viewed or relied on the website or advertising. In their opposition, Plaintiffs clarify that "they are suing based on these on-the-label 'hypoallergenic' representations." Pls.' Opp. at 18, ECF 67.

J&J's motion to dismiss claims based on J&J's website and advertising is GRANTED WITHOUT LEAVE TO AMEND.

Plaintiffs assert in their opposition that even though they do not assert claims based on J&J's website and advertisements, their allegations regarding the website and advertisements bear

on their labeling claims. The Court has not stricken those allegations. The relevance of J&J's website and advertising to labeling claims is not an issue amenable to resolution on a motion to dismiss.

### C. Injunctive Relief

With respect to Plaintiffs' claims for injunctive or declaratory relief, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "To establish standing to seek injunctive relief or declaratory relief, a plaintiff must show he is under threat of suffering 'injury in fact that is concrete and particularized and that the threat must be actual and imminent, not conjectural or hypothetical." *N.Y. v. San Ramon Valley Unified Sch. Dist.*, No. 17-CV-03906-MMC, 2018 WL 2463243, at *2 (N.D. Cal. June 1, 2018) (internal quotation marks, citation, and alterations omitted).

Under certain circumstances, a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the defendant's future advertising can constitute an injury sufficient to grant Article III standing to seek prospective relief. *Davidson*, 889 F.3d at 967. In *Davidson*, the Court found that the plaintiff, who had brought suit based on the defendant's allegedly false representations that its bathroom wipes were "flushable," had standing to seek injunctive relief where she alleged that she: continued to desire to purchase wipes suitable for disposal in a household toilet; would purchase truly flushable wipes manufactured by the defendant if it were possible; regularly visited stores where the defendant's flushable wipes were sold; and continually saw the defendant's flushable wipes packaging but had no way of determining the truth of the representation that the wipes were "flushable." *Id.* at 970-71.

The Court previously found that Plaintiffs' allegations in the FAC that they "would consider" buying J&J's products were insufficient to bring their claim for injunctive relief within the holding of *Davidson*. *See* Prior Dismissal Order, ECF 57. Plaintiffs now allege that they "continue[ ] to desire to purchase hypoallergenic personal care products" and "regularly visit[ ] stores where J&J's products are sold," but that they have "no way of determining the truth of the representation that the products are hypoallergenic." SAC ¶¶ 29-31, 38-40. These allegations are

adequate to confer standing on Plaintiffs to seek injunctive relief.

J&J argues that, unlike the plaintiff in *Davidson* who could not determine whether the defendant's wipes were flushable by looking at the packaging, Rugg and Fish can determine whether a particular baby product contains one or more of the identified ingredients simply by looking at the packaging. This argument is unpersuasive because, as discussed below, Plaintiffs do not allege that the presence of the identified ingredients in any amount renders a product non-hypoallergenic. Plaintiffs allege that the presence of such an ingredient in sufficiently high concentrations renders a product non-hypoallergenic. The packaging does not specify the amount or concentration of each ingredient.

The motion to dismiss Plaintiffs' claim for injunctive relief for lack of standing is DENIED.

## II. RULE 12(b)(6) – FAILURE TO STATE A CLAIM

Plaintiff's factual allegations are accepted as true for purposes of the motion to dismiss under Rule 12(b)(6). *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Even so, J&J asserts that Plaintiffs fail to state a claim because their definition of "hypoallergenic" is unreasonable and they have not alleged facts sufficient to satisfy Federal Rule of Civil Procedure 9(b). In evaluating these arguments, the Court applies the well-known standard articulated by the Supreme Court in *Iqbal* and *Twombly*: while a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Definition of "Hypoallergenic"

The Court dismissed the FAC in large part because Plaintiffs' definition of "hypoallergenic" was unreasonable and implausible. *See* Prior Dismissal Order, ECF 57. Among other things, Plaintiffs alleged that consumers believe that a hypoallergenic product "does not contain any skin sensitizers." FAC ¶ 63. Plaintiffs defined "skin sensitizer" as "a substance that

causes sensitization by skin contact in a substantial number of persons based on human evidence or appropriate animal testing." FAC ¶ 59. Plaintiffs also asserted that consumers "believe and expect that a product that is labeled as hypoallergenic contains no ingredients known to produce a negative reaction – skin irritation, skin corrosion, eye damage, birth defects, cancer, genetic mutations, etc." FAC ¶ 68. The Court concluded that Plaintiffs' definition of "hypoallergenic" was "wholly unrelated to the concept of allergic reaction, which is at the heart of the dictionary definitions of hypoallergenic." Prior Dismissal Order at 5, ECF 57.

In the SAC, Plaintiffs set forth a "Reasonable consumer definition" of "hypoallergenic" as follows: "A reasonable consumer believes that a product labeled as 'hypoallergenic' does not contain skin allergens in an amount that can be reasonably be expected to induce an allergic response in a significant number of people." SAC ¶ 53. The Court finds this definition to be reasonable and plausible. However, the SAC does not stop there. In the next paragraph, Plaintiffs allege the "dictionary definition of 'hypoallergenic.'" SAC ¶ 54. In the paragraph after that, Plaintiffs allege the "scientific and regulatory definition of 'hypoallergenic.'" SAC ¶ 55. The following paragraphs contain a bewildering amount of information regarding "Category 1 skin sensitizers." SAC ¶¶ 56-82. The SAC also alleges that J&J's "hypoallergenic" products "all contain known skin or eye irritants, carcinogens, teratogens, mutagens, or pollutants." SAC ¶ 87.

At the hearing, the Court raised the disconnect between the definition of "hypoallergenic" set forth in paragraph 53 and other allegations in the SAC. Plaintiffs' counsel stated that the only definition of "hypoallergenic" asserted by Plaintiffs is that set forth in paragraph 53, and stated that he "would accept the Court's invitation to amend the complaint to remove or delete" other allegations that made that unclear. Hrg. Tr. 21:5-20, ECF 72.

Accordingly, the motion to dismiss is GRANTED WITH LEAVE TO AMEND as to all claims based on Plaintiffs' definition of the term "hypoallergenic" so that Plaintiffs may clarify their definition.

**B.    Rule 9(b)**

Finally, J&J argues that Plaintiffs' claims are subject to dismissal for failure to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b)

7

requires that where a claim is grounded in fraud, the circumstances constituting the fraud must be alleged with particularity. Fed. R. Civ. P. 9(b); *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). The Court previously dismissed Plaintiffs' fraud-based claims – that is, all claims except Claim 1 – for failure to satisfy Rule 9(b). Among other things, the Court found that Plaintiffs had not adequately alleged which of the products at issue contained which of the ingredients at issue. Plaintiffs have cured that defect by providing a chart identifying which ingredients are contained in which products.

J&J argues that Plaintiffs' chart is insufficient because it does not allege what amount of each ingredient is required to render it an allergen, and does not allege what amount of each ingredient is contained in each of the accused products. The Court is not persuaded that the degree of specificity suggested by J&J is required at the pleading stage. The Court understands Plaintiffs to be alleging that the identified ingredients are present in the identified products in amounts sufficient to cause an allergic response, and thus that the identified products are not properly labeled as "hypoallergenic." *See* SAC ¶¶ 65-66.

This case is distinguishable from *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017), cited by J&J. In *Hadley*, the plaintiff claimed that the defendant's labeling of cereals as "healthy" was misleading because the cereals contained excessive added sugar. *Id.* at 1090. The district court found the plaintiff's allegations to be insufficiently specific because the plaintiff did not allege how much added sugar would be so excessive as to render a cereal unhealthy, or how much added sugar the cereals at issue in the lawsuit contained. *Id.* at 1090-91. The district court observed that the plaintiff presumably conducted a Rule 11 investigation before filing suit, and that "unless Plaintiff's claims are groundless, Plaintiff must have access to at least some knowledge concerning the amount of added sugar in Plaintiff's products." *Id.* at 1091. Unlike *Hadley*, in which the plaintiff provided no concrete measure by which to judge the defendant's alleged wrongdoing, Plaintiffs in the present case have alleged that J&J's challenged products include the identified ingredients in amounts sufficient to cause an allergic reaction, rendering fraudulent the labeling of the products as "hypoallergenic." Those allegations are sufficient for pleading purposes.

8

As discussed above, Plaintiffs have not demonstrated that they have standing to pursue claims based on unpurchased products. However, that is a deficiency separate from J&J's challenge based on failure to allege fraud with sufficient particularity. The motion to dismiss for failure to satisfy Rule 9(b) is DENIED.

**IV. ORDER**

(1) J&J's motion to dismiss is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART, as set forth above;

(2) Any amended complaint shall be filed on or before January 22, 2019; and

(3) Leave to amend is granted only as to the defects alleged herein – Plaintiffs may not add new claims or parties without express leave of the Court.

Dated: January 7, 2019

_____
BETH LABSON FREEMAN
United States District Judge